# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# ANDERSON/GREENWOOD DIVISION

| | |
|---|---|
| LM General Insurance Company, | Case No. 8:17-cv-02506-DCC |
| Plaintiff, | |
| v. | **ORDER** |
| Grace Aylmer, | |
| Defendant. | |

This matter is before the Court on Plaintiff's Motion for Summary Judgment. ECF No. 15. Defendant filed a Response in Opposition, and Plaintiff filed a Reply. ECF Nos. 16, 17. A hearing on the Motion was held on August 21, 2018. ECF No. 25.

## BACKGROUND

Plaintiff brings this action seeking a declaration that Defendant was not an "insured" for purposes of the Underinsured Motorist ("UIM") coverage under her parents' automobile insurance policy on November 9, 2015. ECF No. 1 at 1. Plaintiff issued a LibertyGuard Auto Policy (Policy No. AOS-258-614859-40) ("the Policy"), covering the policy period from from November 30, 2014, through November 30, 2015, to Defendant's parents, Kevin T. Aylmer and Megan Aylmer ("the Aylmers"). The Aylmers are the only named insured under the Policy.[1] ECF No. 15-1 at 3.

---

[1] Defendant and her brother are listed in the "Driver Information" section of the Declarations. ECF No. 15-1 at 5.

Defendant was walking in Clemson, South Carolina on November 9, 2015, when she was struck by an automobile. ECF No. 1 at 2. Defendant sustained injuries that required medical treatment. The driver was convicted of failing to stop for a pedestrian, and Defendant settled with his insurance company for the $100,000 liability limit available under his insurance policy. ECF No. 15 at 2. On March 30, 2017, Defendant made a written claim against Plaintiff seeking UIM coverage under the Policy; Plaintiff denied her claim by letter dated July 19, 2017. ECF Nos. 1 at 4; 1-2.

## **APPLICABLE LAW**

*Summary Judgment Standard*

Rule 56 states, as to a party who has moved for summary judgment, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is "material" if proof of its existence or non-existence would affect disposition of the case under applicable law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). An issue of material fact is "genuine" if the evidence offered is such that a reasonable jury might return a verdict for the non-movant. *Id.* at 257. When determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities against the movant and in favor of the non-moving party. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once the movant has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations

2

averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate specific, material facts exist that give rise to a genuine issue. *Id.* Under this standard, the existence of a mere scintilla of evidence in support of the non-movant's position is insufficient to withstand the summary judgment motion. *Anderson,* 477 U.S. at 252. Likewise, conclusory allegations or denials, without more, are insufficient to preclude granting the summary judgment motion. *Ross v. Commc'ns Satellite Corp.*, 759 F.2d 355, 365 (4th Cir.1985), *overruled on other grounds*, 490 U.S. 228 (1989). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted." *Anderson*, 477 U.S. at 248. Further, Rule 56 provides in pertinent part:

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:
>
> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or
>
> (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

Fed. R. Civ. P. 56(c)(1). Accordingly, when Rule 56(c) has shifted the burden of proof to the non-movant, he must produce existence of a factual dispute on every element essential to his action that he bears the burden of adducing at a trial on the merits.

3

*South Carolina Law*

A federal court exercising diversity jurisdiction applies state substantive law. *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996) (citations omitted). It is undisputed that the substantive law of the State of South Carolina applies to this matter. Under the South Carolina law, insurance policies are subject to the general rules of contract construction. *B.L.G. Enters., Inc. v. First Financial Ins. Co.*, 514 S.E.2d 327 (S.C. 1999). The court must give policy language its plain, ordinary, and popular meaning. *Id*. When a contract is unambiguous, clear, and explicit, it must be construed according to the terms the parties have used. *Id*.; see *Auto-Owners Ins. Co. v. Carl Brazell Builders, Inc.*, 162–163, 588 S.E.2d 112, 115 (S.C. 2003). This court must enforce, not write, contracts of insurance and must give policy language its plain, ordinary, and popular meaning. *Id*. An insurer's obligation under a policy of insurance is defined by the terms of the policy itself and cannot be enlarged by judicial construction. *South Carolina Ins. Co. v. White*, 390 S.E.2d 471 (S.C. Ct. App.1990).

A policy clause extending coverage must be liberally construed in favor of coverage. *Torrington Co. v. Aetna Cas. and Sur. Co.*, 216 S.E.2d 547 (S.C. 1975). Insurance policy exclusions are construed most strongly against the insurance company, which also bears the burden of establishing an exclusion's applicability. *Owners Ins. Co. v. Clayton*, 614 S.E.2d 611, 614 (S.C. 2005); *Boggs v. Aetna Cas. and Sur. Co.*, 252 S.E.2d 565 (S.C. 1979). However, if the intention of the parties is clear, courts have no authority to torture the meaning of policy language or to extend or defeat coverage that was never intended by the parties. *Diamond State Ins. Co. v. Homestead Indus. Inc.*, 456 S.E.2d 912, 915 (S.C. 1995).

When a provision is ambiguous, the intent of the parties controls. *See Holcombe v. Orkin Exterminating Co., Inc.*, 317 S.E.2d 458 (S.C. Ct. App. 1984). Although the interpretation of a contract is generally a matter of law, the intent of the parties becomes a question of fact for the jury when the contract is ambiguous. *Kumpf v. United Tel. Co.*, 429 S.E.2d 869 (S.C. Ct. App. 1993). Accordingly, summary judgment is not appropriate where, due to an ambiguity, the intent of the parties is at issue.

## **DISCUSSION**

### *The Policy*

The UIM coverage under the Policy is controlled by Endorsement PP 04 88 12 94 ("the UIM Endorsement"), which provides,

> We will pay damages which an "insured" is legally entitled to recover from the owner or operator of an "underinsured motor vehicle" because of:
>
> 1. "Bodily injury" sustained by an "insured" and caused by an accident;
>
> \*\*\*
>
> The owner's or operator's liability for these damages must arise out of the ownership, maintenance or use of the "underinsured motor vehicle".

ECF No. 15-1 at 32. The parties agree that Defendant sustained bodily injury that was caused by an automobile accident where the at-fault driver was operating an underinsured motor vehicle. ECF No. 15 at 11.

The UIM Endorsement defines "insured" as,

> 1. You or any "family member".

5

> 2. Any person "occupying" "your covered auto".
>
> 3. Any person for damages that person is entitled to recover because of "bodily injury" to which this coverage applies sustained by a person described in 1. or 2. above.

ECF No. 15-1 at 32. The parties agree that the only applicable provision is "you or your 'family member.'" ECF Nos. 15 at 11; 16 at 3.

The Policy's general definitions section states that the term "you" refers only to the "named insured" shown in the Declarations or their spouse who resides in the same household. ECF No. 15-1 at 9. It appears the parties agree that Kevin T. Aylmer and Megan Aylmer are the only insureds in the Policy's declarations. *See* ECF Nos. 15 at 11; 16; *see also* 15-1 at 3.

The Policy's general definitions page defines "family member" as "a person related to you by blood, marriage or adoption who is a resident of your household. This includes a ward or a foster child." ECF No. 15-1 at 9. The parties agree that the only relevant issue is whether Defendant was a resident of her parents' household at the time of the accident. ECF Nos. 15 at 12; 16 at 3.

*Resident Relative Analysis*

The Aylmers purchased a home located at 302 Bamberg Drive in Bluffton, South Carolina in late November 2010. ECF No. 15-2 at 3. At that time, Defendant was a freshman in college in Grand Rapids, Michigan. ECF No. 15-3 at 3. Defendant completed her college education out of state but did spend semester and summer breaks at her family home in South Carolina. ECF No. 15-2 at 5. Upon her graduation in May 2014, Defendant moved home with her parents in Bluffton, South Carolina. ECF No. 15-3 at 7.

6

In June of that year the Aylmers and Defendant moved into the house next door at 304 Bamberg Drive, Bluffton, South Carolina. ECF No. 15-2 at 4. The Aylmers sold that home in April 2015, and moved into an apartment in Bluffton, South Carolina, until late December 2015. *Id*. at 4–5. At that time, they moved into a new home in Bluffton, South Carolina. *Id*. at 5.

In November 2014, Defendant moved to Washington, D.C., to look for a job and lived as a guest in her sister's apartment. ECF No. 15-3 at 9. Beginning in February 2015, Defendant secured full-time employment in Washington, D.C. *Id.* at 9–12. The positions were for open-ended, at-will, full-time employment. *Id*. at 10, 12. After Defendant obtained a full-time job, she moved out of her sister's apartment and into a row house with roommates. *Id*. at 10, 13. She signed a month-to-month lease without co-signors. *Id.* at 13. In June 2015, Defendant moved into another apartment in Washington, D.C. *Id.* at 11. She signed a one-year lease, without a co-signor, and the electricity was listed in her name. *Id*. In June 2016, she renewed the lease for an additional year. *Id*. Defendant has paid for her portion of the rent and utilities without assistance from the Aylmers. *Id*. at 10–11. After Defendant moved to Washington, D.C., she mainly visited her family in South Carolina for long weekends that typically coincided with holidays. ECF Nos. 15-2 at 6; 15-3 at 14, 23. On the day of the accident, Defendant was treated at GHS Oconee Memorial Hospital; the remainder of her medical treatment occurred at different medical providers in the Washington, D.C., area. ECF No. 15-3 at 17–19.

To determine whether Defendant was a resident or member of her parents' household, the Supreme Court of South Carolina adopted the following test:

> 1) living under the same roof; 2) in a close, intimate and informal relationship[;] and 3) where the intended duration of the relationship is likely to be substantial, where it is consistent with the informality of the relationship, and from which it is reasonable to conclude that the parties would consider the relationship in contracting about such matters as insurance or in their conduct in reliance thereon.

*State Farm & Casualty Co. v. Breazell*, 478 S.E.2d 831, 832 (S.C. 1996).

The Court finds that the facts in this case are similar to the facts as described in *State Farm Fire & Casualty Company v. Hall*, 3:14-cv-03652-MGL, 2015 WL 7454520 (D.S.C. Nov. 23, 2015), wherein the court found that a daughter who lived with roommates, worked full-time, and had the water and electricity in her name which she paid herself was not a resident relative under her father's insurance policy. 2015 WL 7454520, at *4. That court further noted that the daughter lived in a home that was in her name and her parents' names, but her parents lived in a separate residence. *Id*.

In this case, the Aylmers and Defendant did not live under the same roof. The Aylmers lived in South Carolina, and Defendant lived in Washington, D.C., in an apartment where she was listed on the lease and the electricity was in her name. She was employed full-time and paid her rent and utilities herself. She returned home for long weekends occasionally. She filed her own tax returns and her parents did not claim her as a dependent. ECF No. 15-2 at 9. She received some mail at her apartment in Washington, D.C., and at her parents' address in South Carolina; however, she used her

Washington, D.C., address for her credit card and her tax returns.[2] ECF No. 15-3 at 13, 16.

The Court notes the arguments made by Defendant in her Response in Opposition to the Motion for Summary Judgment and at the Motion hearing regarding her intent to return to South Carolina and that she considered her time in Washington, D.C., to be temporary. See ECF No. 16 at 1–2. The Court is also aware of the public policy arguments made by Defendant during the hearing and is certainly sympathetic to the changing nature of a child's relationship with her parents in the years immediately following college graduation. For example, the Court recognizes that children are now able to remain on their parents' health insurance until age 26. However, expanding the definitions of the terms at issue in this case is a more appropriate exercise for legislative rather than judicial action. In this case, the facts reveal that Defendant is not a resident of her parents' household; thus, she is not an insured for purposes of UIM coverage under the terms of the subject policy of insurance.

## **CONCLUSION**

Accordingly, Plaintiff's Motion for Summary Judgment [15] is **GRANTED**.

IT IS SO ORDERED.

October 15, 2018　　　　　　　　　　　　　　　　s/ Donald C. Coggins, Jr.
Spartanburg, South Carolina　　　　　　　　　　United States District Judge

---

[2] The Court notes that at the time of the accident, Defendant had an old address of her parents listed on her driver's license and voter registration. ECF No. 15-3 at 8. In light of the fact that it was not a current address for either Defendant or the Aylmers, it appears that this was a case of failing to update her information, rather than a statement regarding her residence.